IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DUSTIN CLAY (R-23623),** | |
| Plaintiff, | Case No. 12 C 1593 |
| v. | Hon. Harry D. Leinenweber |
| **CHARLES DOWNS,** *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is a Summary Judgment Motion from Officers Downs, Encarnacion, and Wright (the "Defendants"). They argue that Plaintiff failed to exhaust administrative remedies with respect to his claims of excessive force by Downs and the claims against Encarnacion and Wright. Defendants Dr. Ghosh and Wexford, who entered their appearance around the same time the summary judgment motion was filed, have not joined the motion. Plaintiff has responded to the motion. For the reasons stated herein, the Court denies the Motion.

**I. BACKGROUND**

Plaintiff, Dustin Clay ("Plaintiff"), an inmate at the Stateville Correctional Center, filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Stateville Officers Charles Downs ("Downs"), Joe Encarnacion ("Encarnacion"), and Clarence Wright ("Wright"), and against former Stateville Medical Director

Dr. Partha Ghosh ("Ghosh") and Wexford Health Sources ("Wexford") (a Pennsylvania company that contracts to provide medical services to Illinois inmates).

Plaintiff alleges that, on December 1, 2010, Officer Downs used excessive force when he placed his forearm against Plaintiff's throat to demonstrate to another officer how to perform a choke hold on a prisoner. According to Plaintiff, Downs then repeatedly harassed him after the incident. Encarnacion and Wright, Downs' supervisors, allegedly condoned Downs' conduct, thus allowing it to continue. Plaintiff also alleges that he received inadequate medical care for his injuries after the physical abuse.

## II. STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, a court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When addressing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *see also Carrroll v. Merrill Lynch*, --- F.3d ---, 2012 WL 4875456 at *3 (7th Cir. Oct. 16, 2012). With respect to whether an inmate exhausted administrative remedies, the court, and not a jury, must resolve factual issues. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

When addressing summary judgment motions, background facts are derived from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); see also, N.D. Ill. Local Rule 56.1. Because Plaintiff is

proceeding *pro se*, Defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. The notice explains the consequences of failing to properly respond to a motion for summary judgment and to a statement of material facts under FED. R. CIV. P. 56(e) and Local Rule 56.1. (R. 40.)

Plaintiff filed a response to Defendants' Rule 56.1 Statement of Facts. (R. 50.) Although Plaintiff did not file a memorandum in support of his opposition to the summary judgment motion, his response to the Rule 56.1 Statement suffices. Defendants have not filed a reply.

### III. <u>FACTS</u>

Plaintiff is an Illinois prisoner, who was and still is confined at Stateville Correctional Center. (R. 39, Defs. Rule 56.1 Statement of Facts ("SOF") ¶ 1; R. 50, Pl. Rule 56.1 Statement of Facts ("SOF") ¶ 1.) Defendants Downs, Wright, and Encarnacion were correctional officers at Stateville. (Defs. SOF ¶ 2; Pl. SOF ¶ 2.) Plaintiff alleges that, on December 1, 2010, Defendant Downs used excessive when put his forearm on Plaintiff's throat purportedly to demonstrate to a new officer how to do a choke hold. (Defs. SOF ¶ 5; Pl. SOF ¶ 5.) According to Plaintiff, Downs harassed Plaintiff daily after this incident. (Pl. SOF ¶ 5.) Plaintiff alleges that he complained to Defendants Wright and

Encarnacion about Downs' behavior, but they ignored the complaints. (Defs. SOF ¶ 6; Pl. SOF ¶ 6.)

The Illinois Department of Corrections has a formal grievance procedure for inmates. (Defs. SOF ¶ 7; Pl. SOF ¶7.) Under this procedure, an inmate is supposed to first attempt to resolve an issue with his counselor. If the issue is not resolved, the inmate can then file a grievance with a grievance officer. The grievance officer may interview the inmate and witnesses, as well as gather relevant documents to determine the merits of the grievance. (Defs. SOF ¶ 8.) After the grievance officer determines whether the grievance has merit, the grievance is forwarded to the Chief Administrative Officer (the "CAO") (or designee), who either concurs or does not concur with the grievance officer's determination. The CAO's decision is then submitted to the inmate. (Defs. SOF ¶ 9; Pl. SOF ¶ 9.) If the inmate is not satisfied with the CAO's decision, he may appeal, in writing, to the Director of the Department within 30 days. (Defs. SOF ¶ 10.) The Administrative Review Board ("ARB"), the Director's designee, reviews the appeal, determines whether it can be decided without a hearing, and submits a written report of its findings to the Director, who then reviews the report and makes a final decision. (Defs. SOF ¶ 11; Pl. SOF ¶ 11.) The Director's decision and ARB report are then forwarded to the inmate. (Defs. SOF ¶ 12; Pl. SOF ¶12.)

If a grievance is believed to be an emergency, the inmate may submit the grievance directly to the CAO, without first presenting it to a counselor. (Defs. SOF ¶ 13; Pl. SOF ¶¶ 8, 13.) For such grievances, the CAO determines if the inmate faces imminent danger of personal injury or irreparable harm. An inmate may appeal the CAO's decision to the ARB within 30 days of the CAO's decision. (Defs. SOF ¶13.)

Plaintiff filed an emergency grievance on December 1, 2010, about Officer Downs' actions. (Defs. SOF ¶ 14.) Warden Hardy (Stateville's CAO) denied the grievance on December 7, 2010, as not an emergency. (*Id.* at ¶ 15; Pl. SOF ¶ 15.) According to Defendants, Plaintiff did not appeal the warden's denial of the grievance as an emergency until September 22, 2011, thus demonstrating that Plaintiff did not properly exhaust administrative remedies. (Defs. SOF ¶ 16.)

According to Plaintiff, after Warden Hardy determined that the December 1, 2010, grievance was not an emergency, the grievance was not returned to Plaintiff, but instead to his counselor, who responded to it and returned it to Plaintiff at the end of December 2010. (Pl. SOF ¶ 8.) A copy of a grievance attached to Plaintiff's Complaint indicates that the counselor received the grievance on December 21, 2010, and denied it on December 31, 2010. (Compl. at 20 (copy of grievance).) Believing that the grievance had completed the counselor-review stage, Plaintiff submitted the

grievance to a grievance officer. (*Id.*) Plaintiff contends that the grievance officer received the grievance on January 4, 2011, but did not rule on it until April 12, 2012, over fifteen months later. (*Id.; see also* Exh. B (copy of Grievance Officer's Report, stating 1/4/11 as the date received and 4/12/12 as the date reviewed)). Plaintiff states that, after not hearing a response from the grievance officer for several months, he sent the CAO's denial of the emergency grievance to the Director. (*Id.*) Plaintiff included with his Complaint a copy of the ARB's decision denying relief. That document indicates that the appeal was received on September 22, 2011, and decided on October 21, 2011. (Compl. at 18.)

## IV. **DISCUSSION**

The Prisoner Litigation Reform Act requires that, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other federal law, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under § 1997e, no prisoner "is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (*quoting Pozo v. McCaughtry*, 286 F.3d

1022, 1024 (7th Cir. 2002)). Proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at the time the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d 804 at 809; *see also Woodford*, 548 U.S. at 90.

Although a prisoner must properly exhaust administrative remedies before bringing his claim to court, he need exhaust only remedies that are "available" to him. § 1997e(a). If an inmate is prevented from exhausting administrative remedies, such remedies may be considered unavailable. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (prison officials allegedly refused to give prisoner necessary forms, rendering exhaustion unavailable); *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (untimely grievance would be excused if prison official told prisoner to wait before filing it). However, if the fault for not following a facility's exhaustion rules lies with the prisoner, then a claim may be considered unexhausted. *See Pavey*, 544 F.3d at 742. The prison employees bear the burden of establishing that administrative remedies were available to the prisoner. *See Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir.2006).

Defendants contend that Plaintiff failed to exhaust administrative remedies because he did not timely appeal the warden's December 7, 2010, refusal to consider the grievance an

emergency. According to Defendants, Plaintiff waited until September 2011 to appeal the warden's decision that the grievance was not an emergency. Plaintiff contends that the grievance officer's 15-month delay to decide the grievance presented to him prevented Plaintiff from seeking further review.

Although Defendants discuss Plaintiff's September 2011 appeal of the warden's decision that the grievance was not an emergency, they do not address Plaintiff's contention that his "emergency" grievance was provided to Plaintiff's counselor in December 2010 and, from there, apparently traveled the usual and prescribed route for grievances. The grievance attached to Plaintiff's Complaint, indicating that indicates that the counselor received it on December 21, 2010, and denied it on December 31, 2010, (Compl. at 20), and the grievance officer's report submitted with Plaintiff's Rule 56.1 Statement, which indicates that the grievance officer received the appeal on January 4, 2011, but did not rule on it until April 12, 2012, support Plaintiff's contention that he sought to exhaust administrative remedies, but was unable to do so. (Pl. SOF, Exh. B, copy of grievance officer's report).

Viewing the evidence in a light most favorable to Plaintiff, the summary judgment record does not allow a decision that Plaintiff failed to exhaust available administrative remedies. If an appeal was filed with the prison's grievance officer in January 2011, but not decided until April 2012, such a delay rendered

administrative remedies unavailable to Plaintiff. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir.2005); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (not responding to a grievance or an excessive delay with a response may make administrative remedies unavailable). The current summary judgment record, thus demonstrates that administrative review was not available to Plaintiff in accordance with § 1997e(a). Accordingly, Defendants' Summary Judgment Motion is denied. They may refile their Motion if discovery reveals evidence that administrative remedies were, in fact, available to Plaintiff but that he failed to make proper use of them.

## V. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [37] is denied. Plaintiff's Motion opposing Defendant's motion [50] is granted to the extent it is construed as Plaintiff's response to both Defendants' Summary Judgment Motion and their Local Rule 56.1 Statement.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　／s／ _____
　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 12/27/2012