# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DUSTIN CLAY (R -23623), | ) |
| Plaintiff, | ) |
| v. | ) Case No. 12 C 1593 |
| | ) Judge John J. Tharp, Jr. |
| OFFICER CHARLES DOWNS, et al. | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dustin Clay, an Illinois prisoner confined at Stateville Correctional Center, filed this 42 U.S.C. § 1983 action against Stateville Correctional Officer Charles Downs, Officer Charles Wright, Sergeant Encarnacion, Dr. Partha Ghosh and Wexford Health Sources (the Pennsylvania corporation that provides medical services to Illinois inmates). According to Clay, on December 1, 2010, Officer Downs placed his forearm on Clay's neck and choked him for no reason other than to demonstrate to another officer how to harass an inmate. Wright and Encarnacion allegedly ignored Clay's complaints about Downs' harassment of Clay. Dr. Ghosh allegedly ignored Clay's requests for medical attention for his injuries from the December 1, 2010, incident, and Wexford allegedly has an unwritten policy encouraging its physicians to provide the least possible amount of medical care to inmates.

Pending before this Court is Dr. Ghosh and Wexford's ("Defendants") motion for summary judgment. They contend that Clay cannot establish deliberate indifference to his medical needs. Clay has responded. For the reasons stated in this opinion, the Court grants Defendants' motion for summary judgment and dismisses the claims against them.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). All facts and reasonable inferences drawn from the facts are construed in favor of the non-moving party. *Jajeh*, 678 F.3d at 566. However, once the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

When addressing a summary judgment motion, this Court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).

In accordance with N.D. Ill. Local Rule 56.1(a)(3), Defendants' Rule 56.1 Statement "consist[s] of short numbered paragraphs [with] specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in [each] paragraph." Defendants complied with N.D. Ill. Local Rule 56.2 by forwarding to Clay a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" that explained how to respond to a summary

judgment motion and to the factual assertions set out in a Rule 56.1 Statement. (R. 101.) Clay responded to Defendants' summary judgment motion but not their Rule 56.1 Statement. (R. 120).

Although pleadings from *pro se* litigants are liberally construed, they must still comply with the Court's local procedural rules. *Dale v. Poston* 548 F.3d 563, 568 (7th Cir. 2008); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). Previously in this case, Clay responded to a different Rule 56.1 Statement filed by Defendants Downs, Encarnacion, and Wright for their motion for summary judgment, (R. 50), and the Court even noted that Clay complied with Rule 56.1(b) when it denied that summary judgment motion. (R. 58 at 4.) Despite Clay's proper response to a prior Rule 56.1 Statement and the Rule 56.2 Notices he received, he filed no response to the Rule 56.1 Statement of defendants Ghosh and Wexford. Accordingly, this Court deems Defendants' Rule 56.1 factual statements admitted, to the extent they are supported by the record. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court also notes that, in any event, Defendants' Rule 56.1 statements are based primarily on Clay's deposition testimony and Dr. Ghosh's affidavit, neither of which Clay challenges in his response to the summary judgment motion. (R. 120.) With these standards in mind, the Court turns to the facts of this case.

## FACTS

On December 1, 2010, Clay was let out of his cell by Stateville Correctional Officer Downs, who was training a new officer. (R. 99, Defs. SOF ¶ 18.) According to Clay's deposition and complaint, as soon as he exited his cell, Officer Downs placed his forearm on Clay's neck, forced him up against a wall, and pressed using all of his weight. (*Id.*) After the incident, Clay experienced neck pain, right shoulder pain, and numbness and tingling in his index, middle, and pinky fingers of his left hand. (*Id.* at ¶ 19.) The health care unit ("HCU") was not contacted that day about Clay's

injuries. (*Id.* at ¶¶ 20-21.) The next day, December 2, 2010. Clay was examined by Physician Assistant LaTanya Williams. (*Id.* at ¶ 21.) Williams provided Clay with Motrin, Robaxin, and an analgesic balm, which helped relieve his symptoms. (*Id.* at ¶¶ 21, 32.) Clay acknowledged that this prescribed treatment "helped a lot," but he was given only a two week supply. (R. 99, Exh. A. Pl. Depo. at 80-81.) Plaintiff continued to experience periodic back pain for three months, and his neck pain and numbness in his fingers continued for three months. (R. 99, Defs. SOF ¶ 22.) Clay's pains and numbness stopped after three months and have not returned. (*Id.*) Clay states he lifts weights to exercise. After the December 1, 2010, incident, he did not lift weights for approximately three months, but was then able to do so to his full potential. (*Id.* at ¶ 23.) Clay sometimes wakes up with numbness in his shoulders and neck, which he attributes to the mattress and pillow in his cell. (*Id.* at ¶ 24.) He requested a double mattress and extra pillow permit on December 2, 2010, but was refused. (*Id.*)

Clay's claims against Dr. Ghosh and Wexford are that he did not receive follow up care after the December 2, 2010, examination. Clay expected to see Dr. Ghosh after Williams' exam. (*Id.* at ¶25.) Clay does not recall being told or seeing a medical record stating that he needed or would receive a follow up exam with Dr. Ghosh (*id.*); nor does he recall seeing a policy stating that follow up care was required. (*Id.* at ¶ 26.) Rather, he assumed follow up care was the standard procedure. (*Id.*; *see also* R. 99, Exh. A, Clay Depo. at 54-56.) He further believed that only Dr. Ghosh could conduct a follow up exam. (R. 99, Defs. SOF ¶ 25, citing Exh. A, Clay Depo. at 94.) Clay's symptoms subsided and resolved even without receiving follow up care. (*Id*. at ¶ 25.)

Dr. Ghosh was Stateville's medical director from June 18, 2003, to March 31, 2011. (*Id.* at ¶ 27.) In addition to providing medical services to inmates, Dr. Ghosh reviewed records of medical

4

services provided by other Stateville health care providers and determined whether any necessary course of treatment was needed. (*Id.* at ¶ 28-29.) Other health care providers, such as physician assistants, would refer a patient's record to Dr. Ghosh if the required treatment was outside of the services the physician assistant could provide. (*Id.* at ¶ 30.)

Having reviewed Clay's medical records, Dr. Ghosh states in his affidavit that Clay requested emergency care on December 2, 2010, and that he was examined that day by Physician Assistant Williams. (*Id.* at ¶ 31.) Clay reported that he was involved in a maneuver by an officer the day before that resulted in a stiff, sore neck; right shoulder pain; and numbness in the fingers of his left hand. (*Id.*) Williams examined Clay; assessed that he was experiencing an alteration of comfort in the soft tissue area of the neck, cervical spine, and right shoulder; and prescribed an analgesic balm, Motrin, and Robaxin. (*Id.* at ¶¶ 32, 39.) Williams noted on Clay's chart that he was to return to sick-call for follow up care if needed. (*Id.*) (the Court is unable to find Williams' December 2, 2010, Progress Notes in the record; however, Clay, Dr. Ghosh, and Dr. Saleh Obaisi all similarly describe Williams' notes and there is no dispute as to the contents of the notes, *see id.* at ¶¶ 32 and 39; R. 120, Pl. Resp. at 2-3.) After review of Clay's medical records, Dr. Ghosh determined to a degree of medical certainty that Clay did not suffer an objectively serious medical condition, and thus needed neither a referral for additional medical care by another physician nor a follow up exam. (R. 99, Defs. SOF at ¶ 33.) Although Clay alleges he sent Dr. Ghosh a letter on December 17, 2010, requesting a follow up exam, Dr. Ghosh has no recollection of receiving such a letter. (*Id.* at ¶ 34.) However, if Clay wanted additional medical attention, he could have submitted a sick call request, a procedure well known by Stateville inmates. (*Id.*) Clay never returned to the HCU

5

between December 2, 2010, and March 31, 2011, which is when Dr. Ghosh retired his position from Stateville. (*Id.* at ¶ 35.)

There is no written or unwritten policy to provide minimal medical services for cost saving reasons. (*Id.* at ¶ 36.) According to Dr. Ghosh and Dr. Saleh Obaisi, Stateville's current medical director, if an inmate had a serious medical condition requiring treatment, such treatment would be provided regardless of financial implications. (*Id.* at ¶¶ 36, 44.) Decisions as to what treatment inmates receive are based upon the inmate's medical needs, not any financial concerns allegedly instituted by Wexford. (*Id.* at ¶¶ 36, 44.)

Dr. Obaisi's review of Clay's medical records shows that Clay was treated on December 2, 2010, for neck and shoulder pain and for numbness in his left hand. Although Clay returned to the HCU several times in 2011, he never complained about these symptoms until March 12, 2012, after he filed this suit. (*Id.* at ¶¶ 40, 41.) Further, Clay never returned to the HCU with these complaints after the March 12, 2012, visit. (*Id.* at ¶ 42.) Dr. Obaisi's conclusion from review of Clay's medical record is that he suffered no objectively serious medical condition. (*Id.* at ¶ 43.)

## DISCUSSION

Defendants argue the following: (1) Clay's injuries did not rise to the level of an objectively serious medical condition; (2) there is no evidence that Dr. Ghosh acted with deliberate indifference to Clay's injuries; and (3) there is no evidence that Wexford created or condoned an unconstitutional policy or custom with providing inadequate medical care to inmates.

The Eighth Amendment imposes a duty prohibiting prison officials, officers, and physicians from acting with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A deliberate indifference claim consists of objective and subjective

elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish such a claim, an inmate must be able to prove both: (1) he suffered an objectively serious medical condition, and (2) the defendants acted with deliberate indifference to that condition. *Id.*

As to the first prong, a condition is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea* 631 F.3d 843, 857-58 (7th Cir. 2011), quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A condition may also be considered sufficiently serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). "[T]he presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" qualifies as an objectively serious medical condition. *Hayes*, 546 F.3d at 522-23 (chronic spasms on one side of inmate's scrotum about once a day were considered sufficiently serious to trigger Eighth Amendment concerns), citing *Gutierrez*, 111 F.3d at 1373 (painful back pilonidal cyst was a serious medical condition); *see also Dobbey v. Liping Zhang*, No. 11 C 2374, 2013 WL 4838916 at *6 (N.D. Ill. Sep. 10, 2013) (an inmate's "throwing out" his back causing chronic pain for periods of time was a serious medical condition). However, "[a] prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue–the sorts of ailments for which many people who are not in prison do not seek medical attention–does not by its refusal violate the Constitution." *Gutierrez*, 111 F.3d at 1372.

The record indicates that a jury could conclude that Clay's injuries amounted to a serious medical condition. Clay testified in his deposition that, after the December 1, 2010, incident, he

7

experienced back, neck, and right shoulder pain, as well as tingling and numbness in his left hand for an extended period of time. According to Clay, for three months his neck and shoulder was constant, while his back pains continued off and on. Letters or memos Clay wrote to Dr. Ghosh on December 17, 2010, and January 10, 2011, stated that he was still experiencing back and shoulder pain, as well as tingling in his right hand. The December 17, 2010, letter states that Clay was requesting a follow up exam "because I have been in so much pain since this injury happened." (Compl. at 14-15.) The Court notes that the pain medication and analgesic balm Clay received from Physician Assistant Williams on December 2, 2010, as well as Tylenol Clay later obtained from other inmates, significantly relieved his pain, (R. 99, Exh. A, Pl. Depo. at 31, 34), which arguably indicates that his pain was not serious. Nevertheless, the record contains sufficient evidence that Clay experienced constant shoulder and neck pain and chronic bouts of back pain for three months. There is thus at least an issue of triable fact as to whether his condition was more than the sort of mild aches and pains described in *Gutierrez*, 111 F.3d at 1372. Defendants are not entitled to summary judgment on this issue.

Although Clay may be able to establish that he suffered a serious medical condition, he has not and, given the evidence of record, cannot establish that Dr. Ghosh acted with deliberate indifference. According to the record, Dr. Ghosh neither examined Clay, nor did he receive Clay's letters or grievance requesting an exam. (R. 99-2, Exh. B, Dr. Ghosh's Aff. ¶ 9.) And even had Dr. Ghosh received Clay's requests, the record reflects no basis to conclude that an examination by Dr. Ghosh was required. Physician Assistant Williams' December 2, 2010, exam–where she assessed a soft tissue injury to Clay's neck and shoulder, prescribed Motrin, Robaxin, and an analgesic balm, and told him to seek a follow up if needed—substantially alleviated Clay's pain and suggests no


reason to refer him for further treatment. There is no indication that Clay's condition was outside Williams' expertise or that she was not competent to provide further treatment to Clay were it needed. Furthermore, Williams told Clay to return for a follow up exam if needed, but he did not do so. Clay himself acknowledges that the medications Williams prescribed "helped a lot," further demonstrating that Williams was capable of treating his condition, such that she would not have referred him to Dr. Ghosh for review or additional treatment. (R. 99-1, Exh. A, Pl. Depo. at 80-81.)

Without a referral from Williams, the only evidence that Dr. Ghosh knew about Clay's condition or his complaints of pain are the two letters Clay wrote to Dr. Ghosh and a grievance Clay filed. Dr. Ghosh, however, states he never received the letters or grievance and that, if Clay wanted a follow up exam, he should have submitted a sick call request, a procedure plainly known to Clay, who used it to secure his initial treatment and for other unrelated complaints. Clay does not dispute that Dr. Ghosh never received the letters or grievance or that he could have submitted a sick call request. Rather, Clay contends that Dr. Ghosh created or allowed a procedure where others read medical requests and grievance seeking medical attention and then report to Dr. Ghosh. Clay argues that, to the extent this process does not provide required medical care, Dr. Ghosh is responsible for knowingly allowing ineffective procedures to continue. (R. 120 at 3-4.) The problem with this argument is that the evidence of record establishes that he received adequate care with respect to his injuries and that Dr. Ghosh had no contrary information. Moreover, while Clay, like other prisoners, has the right to receive medical treatment to address serious medical needs; he does not have the right to see a physician for any and all medical issues. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("the Eighth Amendment does not require that prisoners receive 'unqualified access to health care.' Rather, they are entitled to only 'adequate medical care'"). There is nothing

inadequate *per se* about the establishment of procedures that permit treatment by medical personnel other than physicians that is consistent with prevailing medical standards. *See id.*; *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (an inmate "is not entitled to demand specific care. [H]e is not entitled to the best care possible. [H]e is entitled to reasonable measures to meet a substantial risk of serious harm to h[im]"). Clay makes no argument that prevailing medical standards do not permit physician assistants to provide treatment for the sort of injuries he allegedly incurred, and he does not contend that Williams' treatment of his injuries was insufficient.

Based on the record, Dr. Ghosh's lack of knowledge as to Clay's complaints of pain during the three months after the December 1, 2010, incident is undisputed and there is no evidence indicating that Dr. Ghosh created or allowed a procedure intentionally keeping him uninformed of inmates' serious medical conditions. Summary judgment is thus granted for Dr. Ghosh.[1]

For similar reasons, the Court comes to the same conclusion for the claims against Wexford. Clay claims that Wexford had a policy or practice not to provide adequate health care to inmates. To establish a constitutional violation against Wexford, Clay must be able to prove that there was an express policy; a widespread practice so entrenched and well-known that it carries the same force as a policy, or actions of an individual who possesses the authority to make final policy decisions. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). According to Clay, medical personnel initially provide minimal care, enough only to satisfy any legal requirements, and

---

1 The plaintiff purports to sue Dr. Ghosh in both his individual and official capacities. A suit against Dr. Ghosh in his official capacity is no different than a suit against Wexford, *see Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012) (suing an employee in his official capacity is the same as suing the organization that employs him); *Echezarreta v. Kemmeren*, No. 10 C 50092, 2013 WL 4080293 at *2 (N.D. Ill. Aug. 13, 2013) (suing a Wexford doctor in his official capacity was considered the same as suing Wexford), and fails for the same reasons, set forth below, that the claim against Wexford fails.

then ignore inmates' requests for medical attention in the hopes that they tire of asking for treatment. Apart from the implicit and presumably unintentional admission in this argument that he has no claim (if medical personnel provide sufficient treatment to satisfy legal requirements, then Clay cannot have a claim based on a failure to provide treatment in accordance with legal requirements), Clay presents no evidence to support such allegations, which, like his claim against Dr. Ghosh, appear to be based upon Clay's assumptions as to how medical care is provided at Stateville. "There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

The treatment Clay received demonstrates no custom or policy with deliberately providing insufficient care for an inmate's medical condition. He was seen by a physician assistant the day after he sustained his injuries. The physician assistant assessed soft tissue injuries, prescribed pain medication and an analgesic balm, and told Clay to return to sick call if he needed additional medical attention. Clay's assumption that follow up exams are the standard practice and his writing of letters and grievances, but not sick call requests (the procedure set out for obtaining an appointment with a medical person), cannot establish an unconstitutional policy or custom by Wexford to ignore inmates' medical needs.

The only indication that someone in the medical department was aware of Clay's pain and requests for additional medical care is Clay's 1/31/11 grievance, to which an HCU employee responded that Williams' 12/2/10 exam stated no need for follow up care. (R. 1, Compl. at 22-23.) Even if this response from the prison's medical department was not appropriate, one inappropriate response is insufficient to establish an unconstitutional practice of denying medical care for

11

inmates. "Although the Seventh Circuit has 'not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice.'" *Rouei v. Village of Skokie*, No. 12 C 6622, 2014 WL 3725872 at *8 (N.D. Ill. July 28, 2014) (Kennelly, J.), quoting *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014), but see *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) (the Supreme Court has noted that proof a single incident of a constitutional violation may demonstrate an unconstitutional policy or custom where there is also evidence of a failure to train; the evidence in this case, however, reveals no wrongdoings other than one HCU person's denial of one grievance). The record thus demonstrates that Clay cannot establish an unconstitutional policy or custom by Wexford.

The Court notes that the lack of any evidence demonstrating deliberate indifference by Dr. Ghosh or an unconstitutional custom or policy with medical care at Stateville does not appear related to any limitations on Clay's ability to conduct discovery. The Court instructed Clay to forward discovery requests to counsel for Defendants, which Clay did. (R. 76, 85.) The Court notes that Clay's requests for counsel have been denied; however, it appears clear from the record that additional discovery would not alter the outcome of Clay's claims against Dr. Ghosh and Wexford. Dr. Ghosh swears in his affidavit that he never received letters or a grievance from Clay; that Physician Assistant Williams' December 2, 2010, exam indicated no need for follow up care; and that, if Clay wanted another medical examination, he should have submitted a sick call request. Although Clay successfully asserted claims of deliberate indifference against Dr. Ghosh and Wexford, after discovery, it is clear that there is no evidence to prove the claims. Given the record, there is no "reasonable likelihood that the recruitment of counsel would have made a difference in

the outcome of the litigation." *Dewitt v. Corizon, Inc.*, __ F.3d __, 2014 WL 3686080 at *2 (7th Cir. July 25, 2014).

Furthermore, Clay's competence to represent himself is well demonstrated in the record. He completed two years of college; he forwarded discovery requests and sought to compel responses when needed; he successfully challenged the Court's dismissal of Wexford on initial review; and he successfully defended against Defendants Downs, Wright, and Encarnacion's motion for summary judgment. (R. 99, Exh. A, Clay Depo. at 7; R. 7, 29, 50, 58, 80, 85, 88.) The Court makes no determination now whether Clay will need counsel for any further discovery on the remaining claims against the Downs, Wright, and Encarnacion; however, as to the claims against Dr. Ghosh and Wexford, the record reveals that representation by an attorney was unnecessary.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment (R. 98). The Court dismisses Dr. Ghosh and Wexford as defendants in this matter, and pursuant to Fed. R. Civ. P. 54(b), certifies that there is no just reason to delay entry of final judgment against these defendants and enters such final judgment. (Plaintiff is therefore advised that his time to appeal the Court's judgment as to defendants Ghosh and Wexford begins to run from the entry of the Judgment Order with regard to those defendants.) Plaintiff may proceed in this Court with his claims against Officers Downs, Wright and Encarnacion.

ENTER: *[signature]*
**John J. Tharp, Jr.
United States District Court Judge**

**DATE: 8/20/14**